## PEOPLE v LOTTER

Docket No. 44833. Submitted October 7, 1980, at Detroit.—Decided February 3, 1981. Leave to appeal applied for.

Richard L. Lotter was convicted of assault with intent to do great bodily harm less than murder and was sentenced to prison, Lapeer Circuit Court, Norman A. Baguley, J. He appeals by leave granted, alleging that he was denied the effective assistance of counsel and thus a fair trial due to the trial tactics of his attorney and that the prosecution's failure to endorse and produce certain res gestae witnesses during trial resulted in prejudice to him, and entitled him to a new trial. *Held:*

1. The trial court's determination that defendant was afforded effective assistance of counsel was not clearly erroneous. The record indicates that defense counsel's failure to raise an insanity defense was a question of trial strategy.

2. The testimony of the witnesses in question at the motion hearing indicated that their testimony at trial would have been at best cumulative and at worst detrimental to defendant's case.

Affirmed.

D. C. RILEY, P.J., dissented. She would hold that defendant made out a prima facie showing of incompetence on the part of defense counsel and that defendant was thereby deprived of a possible meritorious defense. She would reverse.

### OPINION OF THE COURT

1. CRIMINAL LAW — RIGHT TO ADEQUATE COUNSEL — CONSTITUTIONAL LAW.

The constitutional right to counsel does not guarantee an accused

REFERENCES FOR POINTS IN HEADNOTES

[1-6, 8, 9] 16A Am Jur 2d (Rev), Constitutional Law § 842.

21 Am Jur 2d, Criminal Law §§ 222, 315.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR 4th 27.

[1-6, 8, 9] Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.

[3, 7] 58 Am Jur 2d, New Trial § 161.

person that his lawyer will not make a big mistake; the Constitution guarantees only that the accused person will enjoy representation by an attorney adequately equipped by his training in the law to undertake the case and who will diligently, conscientiously, and honestly represent the accused person.

2. CRIMINAL LAW — RIGHT TO A FAIR TRIAL — RIGHT TO ADEQUATE COUNSEL — CONSTITUTIONAL LAW.

A defendant has the right to a fair trial, and, even where the assistance of counsel satisfies the constitutional requirements for adequacy of counsel, a defendant may be denied this right where his counsel makes a serious mistake.

3. CRIMINAL LAW — NEW TRIAL — COURTS — INEFFECTIVE ASSISTANCE OF COUNSEL.

A court should not grant a defendant a new trial where defense counsel has made a serious mistake unless it finds that but for the mistake the defendant would have had a reasonably likely chance of acquittal.

4. CRIMINAL LAW — ASSISTANCE OF COUNSEL — INEFFECTIVE ASSISTANCE OF COUNSEL — CONSTITUTIONAL LAW — APPEAL.

Assistance of counsel will not be held to be constitutionally defective, even where defense counsel has made a serious error, where the action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney.

5. CRIMINAL LAW — TRIAL TACTICS — APPEAL — ASSISTANCE OF COUNSEL.

A difference of opinion as to trial tactics does not amount to ineffective assistance of counsel, and the Court of Appeals is reluctant to substitute its judgment for that of a trial counsel in matters of trial strategy.

DISSENT BY D. C. RILEY, P.J.

6. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

*Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law.*

7. CRIMINAL LAW — MISTAKES BY COUNSEL — NEW TRIAL.

*A mistake made by defense counsel which if not committed would likely have resulted in a defendant's acquittal requires a new trial.*

8. CRIMINAL LAW — INCOMPETENT COUNSEL — APPEAL — FAILURE TO
   ADEQUATELY DEFEND.
   *A prima facie showing of incompetence of defense counsel is
   established where a defendant presents sufficient evidence on
   appeal to demonstrate that trial counsel failed to investigate
   and prepare a substantial defense and that the defendant was
   deprived of that defense.*

9. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — FAILURE
   TO ADEQUATELY DEFEND.
   *The exercise of the utmost skill during a trial by a defense
   counsel is not enough if counsel has neglected the necessary
   investigation and preparation of a case or failed to interview
   essential witnesses or to arrange for their attendance.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Earl H. Morgan, Jr.,*
Prosecuting Attorney, and *Nick O. Holowka,* Chief
Assistant Prosecutor, for the people.

*Fitzgerald, Dumon & Geddis,* for defendant on
appeal.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and
MACKENZIE, JJ.

N. J. KAUFMAN, J. Defendant was charged with
assault with intent to commit murder, MCL
750.83; MSA 28.278, and was convicted by a jury
in Lapeer County Circuit Court of assault with
intent to do great bodily harm less than murder,
MCL 750.84; MSA 28.279. On October 11, 1977,
defendant was sentenced to from six to ten years
imprisonment. The trial court denied defendant's
motion for a new trial. This Court granted his
application for delayed appeal.

The facts of this case are ably set forth in the
dissenting opinion and need not be restated here.
Defendant's primary contention on appeal is that
he was denied the effective assistance of counsel

and thus a fair trial by the failure of his attorney to pursue a defense of temporary insanity based upon intoxication.

In *People v Degraffenreid,* 19 Mich App 702, 712; 173 NW2d 317 (1969), this Court adopted a strict standard for review of claims of ineffective assistance of counsel:

"The constitutional right to counsel does not guarantee an accused person that his lawyer will not make a big mistake. The constitution guarantees only that the accused person will enjoy representation by an attorney adequately equipped by his training in the law to undertake the case and who will diligently, conscientiously and honestly represent the accused person."

As Judge RILEY's dissent notes, it is, nevertheless, true that even where the assistance of counsel satisfies the constitutional requirements the defendant still has the right to a fair trial and may be denied this right if an adequate counsel makes a serious mistake, *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976). Even given a serious mistake, however, "a court should not grant a new trial unless it finds that but for this mistake defendant would have had a reasonably likely chance of acquittal. *Degraffenreid, supra* at 718".

The Supreme Court in *Garcia* made it clear that if " 'action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective' ". *Id.*

On the facts of the instant case, it does not appear that the standards enunciated in *Garcia,* have been violated. Although hindsight indicates that pursuit of the insanity defense might possibly

have been advantageous, this is not the test for ineffective assistance of counsel. *Id.*

In the case *sub judice,* defendant's counsel filed notice of intent to assert an insanity defense and arranged for a forensic center evaluation of defendant. It was the conclusion of the examining physician that defendant was competent to stand trial and was legally sane at the time of the commission of the offense. Defendant himself admitted that trial counsel had explored with him the possibility of an insanity based on alcoholism defense and that trial counsel had felt that such defense would be detrimental to defendant's case. It thus seems that counsel was aware of the law relating to the insanity defense and fully investigated and evaluated the possibility of raising this defense before concluding that it was not the best tactical choice.

Defendant's counsel chose to pursue a defense premised on lack of specific intent or accident rather than of insanity. Based on the briefs and records of this case, it clearly cannot be said that this decision rendered the assistance of defendant's counsel constitutionally ineffective.

It is well established that this Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy. *People v Crosby,* 19 Mich App 135; 172 NW2d 506 (1969), *People v Mays,* 64 Mich App 453; 236 NW2d 513 (1975). As this Court stated in *People v Penn,* 70 Mich App 638, 648; 247 NW2d 575 (1976):

"We do recognize the right of every defendant to effective assistance of counsel. * * * However, a difference of opinion as to trial tactics does not amount to ineffective assistance of counsel. * * * We do not wish to second guess trial counsel, for we have none of his knowledge of the existing state of facts *at the time of trial.* Every criminal trial could be subject to some

disagreement as to tactics or conduct of defense with the benefit of hindsight. We find that defendant did receive effective representation at trial and a fair trial." (Footnotes omitted; emphasis in original.)

Our review of the record in the instant case convinces us that trial counsel's failure to rely on defendant's insanity defense was a question of trial strategy. We cannot, therefore, say that the trial court's determination that defendant was afforded effective assistance of counsel was clearly erroneous. See *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

We find defendant's second claim of error to be without merit. Defendant contends that he was prejudiced by the prosecution's failure to endorse and produce certain res gestae witnesses and is, thus, entitled to a new trial. Our perusal of the motion-hearing testimony of the three witnesses in question convinces us that their testimony at trial would have been, at best, cumulative and, at worst, detrimental to defendant's case.

Affirmed.

MACKENZIE, J., concurred.

D. C. RILEY, P.J. *(dissenting).* I respectfully dissent.

Defendant asserts that he was denied the effective assistance of counsel and thus a fair trial, based upon the failure of his attorney to pursue an insanity or intoxication defense, to object to improper cross-examination, and to move for the sequestration of the prosecution's witnesses. I agree, for the reasons given below, that the defendant was denied the effective assistance of counsel.

For a proper understanding of my disposition of this case, a rather detailed statement of facts is

necessary. On the evening of September 15, 1976, defendant broke into the mobile home of his wife, armed with a .22-caliber semi-automatic rifle, and threatened to kill himself. The couple was in the process of seeking a divorce. Defendant's wife fled the premises, and shortly thereafter the police arrived. For approximately one and one-half hours, the police attempted to talk defendant out of killing himself.

At one point, one of the officers saw defendant remove his finger from the trigger to the stock of the gun. Seeing a chance to overpower defendant, a second officer threw a flashlight at defendant and lunged for the rifle, grabbing the barrel. The officer who grabbed the gun testified that defendant then brought the gun down, placed his finger on the trigger, and fired. In the ensuing struggle for the rifle, defendant fired three shots, two of which struck the police officer.

Defendant testified on his own behalf. His defense was essentially that the shooting was an accident which occurred as the result of the officer's grabbing the gun. In response to questions from defense counsel, defendant stated that he had retired from Chevrolet on disability due to drinking and nerves, had consumed six to eight beers on the date of the incident, had been under psychiatric care in the past, and was under such care at the time of trial.

Prior to trial, defense counsel filed a notice of an insanity defense and moved for a forensic examination. The forensic report disclosed that it was the opinion of the forensic center that defendant was competent to stand trial, and, following a competency hearing, defendant was adjudged competent to stand trial.

Subsequent to conviction, with the assistance of

appellate counsel, defendant filed a motion for new trial. At the hearing on the motion, a psychiatrist testified that he had treated defendant numerous times beginning in 1969 or 1970, up through within two weeks prior to the shooting and thereafter. The psychiatrist expressed the opinion that on September 3, 1976, two weeks before the shooting, defendant was immature and hostile, with an element of infantile thinking which became simple schizophrenia. The doctor also testified that defendant's case was one of the worst he had handled and that, at the time of the shooting, defendant was mentally ill (as defined by statute), that he did not have the intent to shoot, and that his judgment was disturbed and impaired.

On cross-examination, the doctor expressed the view that defendant's primary problem was alcoholism and in-law difficulties and that his mental illness was not primarily the result of alcoholism, that alcoholism "came second".

Finally, the psychiatrist read a letter from defendant's trial counsel dated February 22, 1977, which contained a release signed by defendant and a request for a report setting forth the doctor's treatment, diagnosis, prognosis, and so forth, regarding defendant. The doctor testified that he could not find his reply to this request and that he could not recall if he did answer the inquiry or speak with defense counsel. He indicated further that, prior to the request of appellate counsel, no one had asked him to form an opinion concerning defendant's sanity.

A medical director of Brighton Hospital (an alcoholic rehabilitation facility) in charge of alcohol therapy at the hospital testified that defendant was hospitalized on two occasions several months prior to trial. The doctor related defendant's long-

standing history of drinking and noted four previous suicide attempts. After being advised of the statutory definition of insanity, the doctor opined that defendant was legally insane on the date of the shooting, irrespective of whether defendant had consumed alcohol.

Defendant also took the stand at the motion hearing. He stated that trial counsel knew that he was undergoing psychiatric treatments and that he requested his attorney to call his psychiatrist to testify at trial. Defendant stated that he did not know why his request was not pursued. However, as to the forensic psychiatrist, defendant stated that trial counsel advised him that the psychiatrist could not be located and that no record could be found as to where the psychiatrist had moved.

Finally, on redirect-examination, defendant testified that, to his knowledge, trial counsel never interviewed his brother or mother, both of whom knew about defendant's alcoholic history. At one point, defendant stated that trial counsel told him one of the medical records indicated mild schizophrenia, but defendant claims that he never saw the reports and that he did not know if trial counsel had such reports.

The Constitution guarantees that an accused will enjoy representation by an attorney adequately equipped by his training in the law to undertake a case and who will diligently and conscientiously represent the accused. *People v Degraffenreid,* 19 Mich App 702, 712; 173 NW2d 317 (1969). Even where the assistance of counsel satisfies the constitutional requirement, a defendant is still entitled to a fair trial and may be denied a fair trial if his attorney makes a serious mistake. *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976). A court should not grant a new

trial, however, unless it determines that but for such a mistake, a defendant would have had a reasonably likely chance of acquittal. *Degraffenreid, supra,* 718, *Garcia, supra,* 266.

In *Garcia,* the Supreme Court rejected the "sham" test of *Degraffenreid* and held that counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law. The Court also observed that a mistake which if not committed would likely result in an acquittal requires a new trial. *Garcia, supra,* 266. The Court stressed, however, that, if the actions of defense counsel that appear erroneous from hindsight were taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective. *Id.*

While this Court is reluctant to second-guess the trial tactics utilized by counsel since we do not possess the same knowledge of the facts and circumstances as they existed at the time of the trial, see, *e.g., People v Penn,* 70 Mich App 638, 648; 247 NW2d 575 (1976), if the defendant can present sufficient evidence on appeal to demonstrate that trial counsel failed to investigate and prepare a substantial defense and that defendant was deprived of that defense, a prima facie showing of incompetence has been established, *People v Lewis,* 64 Mich App 175, 183-184; 235 NW2d 100 (1975).

I believe that the failure to investigate and prepare a substantial defense is something more than, and separate from, simple trial strategy. As was stated in *Lewis, supra,* 183: "The importance of defense counsel's pretrial investigation and preparation cannot be overemphasized." Citing *Moore v United States,* 432 F2d 730 (CA 3, 1970), the *Lewis* Court continued:

" 'Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. *(Moore, supra* at 735).

" 'The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance. Such omissions, of course, will rarely be visible on the surface of the trial'. *(Id.* at 739.)" *Id.*

An examination of the record persuades me that the lower court erred in concluding that it was an acceptable decision to forego pursuing the defense of insanity based upon the long-term effects of alcoholism. The filing of a notice of insanity, docket entries concerning defendant's various hospitalizations coupled with the inquiry directed to defendant's psychiatrist for a report, and questions asked of defendant at trial by defense counsel pertaining to his disability pension and psychiatric treatment indicate that defense counsel was well aware of a possible insanity defense. Nevertheless, the record clearly reflects that defense counsel failed to thoroughly investigate, providing no bases for an intelligent determination as to whether a valid insanity defense existed. What investigation there was, counsel handled ineptly. For example, there was no follow-up to the request for a report from defendant's psychiatrist. Further, there is no indication that trial counsel contacted the medical director at Brighton Hospital. Finally, the medical testimony at the motion hearing disclosed that an insanity defense was substantial since the testimony amply supported such defense. Nothing in the record indicates that defense counsel followed up important evidence bearing on defendant's mental state at the time of the incident.

Defendant has made out a prima facie showing

of incompetence. Through failure to investigate and prepare a substantial defense, defendant was deprived of a possible meritorious defense.

I would, therefore, reverse defendant's conviction.